Rose WARREN

v.

**WATERVILLE URBAN RENEWAL
AUTHORITY.**

Supreme Judicial Court of Maine.

April 24, 1972.

Daviau & Geller, by Jerome G. Daviau, Waterville, for plaintiff.

Jolovitz & Niehoff, by Lester T. Jolovitz, Waterville, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

The plaintiff, Rose Warren, was the owner of real estate situated on Temple Court in the City of Waterville in this State. The defendant Authority exercised its power of eminent domain and acquired the property pursuant to 30 M.R.S.A., § 4807, but not without a contest. See, Warren v. Waterville Urban Renewal Authority, 1965, 161 Me. 160, 210 A.2d 41.

After trial of her complaint praying for the assessment of damages by a jury, Mrs. Warren was dissatisfied with the verdict of sixty thousand ($60,000) dollars, but

this Court ruled on appeal that the plaintiff had been awarded "within proper constitutional strictures" the just compensation to which she was entitled for the taking of her property. Warren v. Waterville Urban Renewal Authority, 1967, Me., 235 A.2d 295.

The plaintiff's original complaint for damages was amended on September 24, 1965 by the introduction of a second count in which Mrs. Warren sought damages for the alleged tortious interference by the Authority, prior to its actual taking of the property, with the plaintiff's tenancy contracts that she had acquired in the operation of her rental venture upon the premises. Other amendments not material to the instant issue were made and allowed.

On October 8, 1965 the Authority moved to dismiss the complaint as amended or the second count, pursuant to Rule 12(b) (6), M.R.C.P., for failure to state a claim upon which relief can be granted. This motion lay dormant until on November 14, 1968, by agreement of the parties, a Justice of the Superior Court after hearing took the same under advisement with their mutual understanding that the defendant's original answer and motion to dismiss were to be considered as addressed to the plaintiff's complaint as it stood amended at that time.

The decision on the motion was filed on December 12, 1968 and reads in pertinent part as follows:

## ORDER

"On November 18, 1968 hearing was had with counsel on Defendant's Motion to Dismiss dated October 8, 1965. The second ground cited in the motion was withdrawn by the Defendant. *The motion is granted on the first ground, to wit; failure to state a claim upon which relief can be granted.*

*Plaintiff relies principally on the case of* Sidelinker vs. [York Shore] Water Company, 117 Maine 528 [105 A. 122] (1918).

The Defendant relies principally on the record and upon the award of damages in the related proceedings in Docket Nos. 8894, 2077, etc.

*Plaintiff's reliance on the Sidelinker case is misplaced* in as much *as the Defendant* in this case has *completed lawful acquisition of the Plaintiff's property,* Warren vs. W.U.R.A., 161 Maine 160 [210 A.2d 41]; and *paid damages therefore* (sic) in Warren vs. W.U.R.A. ME., 235, A 2nd, 295.

*Plaintiff is entitled to nothing further."* (Emphasis added.)

In Warren v. Waterville Urban Renewal Authority, 1969, Me., 259 A.2d 364, we reviewed the procedural legal activity carried on by the plaintiff in an effort to prevent the Court's decree of December 12, 1968 from operating as an adjudication upon the merits mandated by the provisions of Rule 41(b) (3), M.R.C.P. The plaintiff's attempt to secure a reconsideration of the Superior Court's ruling on the motion to dismiss and obtain a reinstatement of her amended complaint failed on appeal by reason of the untimeliness of her motion to vacate and/or modify the judgment of dismissal.

Again, the plaintiff on December 16, 1969 renewed her efforts at compelling a review of the original decree of dismissal when she filed a motion for relief under Rule 60(b), M.R.C.P. which provides that

"[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

\* \* \* \* \* \*

(4) the judgment is void; . . ."

This motion was denied in the Superior Court on January 5, 1971. The present appeal raises the propriety of the denial of the motion and puts forth for our consideration whether, as contended by the plaintiff, the dismissal judgment is void. The appeal is without merit.

■ The relief from a final judgment under Rule 60(b), M.R.C.P., in most part, is subject to the exercise of a sound discretion by the trial court upon competent evidence supporting one or more of the reasons for which relief is provided by the Rule, and the action of the trial judge in such circumstances is reviewable by the Law Court only for abuse of discretion. Northland Industries, Inc. v. Kennebec Mills Corporation, 1965, 161 Me. 455, 214 A.2d 100; Cousins v. Hooper, 1966, Me., 224 A.2d 836; Willette v. Umhoeffer, 1968, Me., 245 A.2d 540.

■ The motion to vacate the dismissal judgment asserts as the ground for such action that "such judgment of dismissal is void as being in contravention of the federal constitution and deprives the plaintiff of her property without due process of law and without just compensation since the statute of limitations on her claim has otherwise expired." When relief is sought under Rule 60(b) (4) for the reason that the challenged judgment is *void*, there is no room for the operation of the rule which requires the court to exercise discretion in the matter. The judgment is either void or it is valid; if valid, the judgment stands; if void, it must be set aside. Emery v. Emery, 1965, Wyo., 404 P.2d 745; 2 Field, McKusick and Wroth, Maine Civil Practice, § 60.9; 3 Barron & Holtzoff, § 1327, p. 412.

■ Notwithstanding the failure to appeal from the judgment, a party may move to set it aside for voidness if it was obtained in violation of due process of law such as by the denial of participancy in the hearing which resulted in the assailed judgment. See, Winhoven v. United States, 1952, 9 Cir., 201 F.2d 174; Escoe v. Zerbst, 1935, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. It affirmatively appears from the record that the plaintiff participated actively in the hearing on the motion to dismiss. Plaintiff's claim of deprivation of procedural due process is without merit.

Plaintiff further contends that the dismissal judgment, by indicating the specific underlying reason for granting the motion to dismiss *for failure to state a claim upon which relief can be granted,* shows on its face that the Court below in its decision went beyond the scope of the issue tendered by the pleadings and thus the ensuing judgment by reason thereof is void and must be set aside as a deprivation of property without just compensation. We disagree.

The dismissal judgment was not subjected to the scrutiny of the Law Court for accuracy in law, as the plaintiff withdrew her appeal therefrom and it stands unreversed.

■ Fundamental lack of authority in the court to enter the judgment for want of jurisdiction either of the subject matter or over the parties, however, transcends any waiver of the right of appeal or the withdrawal of an appeal, once taken, as in the instant case. As stated in Penobscot Railroad Company v. Weeks, 1864, 52 Me. 456: "No court can rightfully render judgment in a cause until it has acquired complete jurisdiction over the parties, the subject matter of the suit, and the process." It is for that very reason want of jurisdiction is said to be fatal in every stage of the case and judgments emanating from proceedings having such basic deficiencies are vulnerable to attack either in direct appeals (Charles Cushman Co. v. Mackesy, 1938, 135 Me. 490, 200 A. 505), or, if the want of jurisdiction appears on the face of the record, then in an appropriate collateral procedure. Hobbs v. Hurley, 1918, 117 Me. 449, 104 A. 815.

■ If the court in which the proceedings took place had jurisdiction to render the judgment which it did, no error in its proceedings which did not affect the jurisdiction will render the proceedings void, and the judgment stands. Blaisdell v. Inhabitants of the Town of York, 1913, 110 Me. 500, 509, 87 A. 361; Crockett v.

Borgerson, 1930, 129 Me. 395, 400, 152 A. 407; Inhabitants of Lincolnville v. Perry, 1954, 150 Me. 113, 119, 104 A.2d 884.

■■ The judgment rendered by a court of general jurisdiction is endowed with every reasonable presumption of validity, and to that end it will be presumed that the court acted within the general scope of its powers and issued the judgment with authority. Bisbee v. Knight, 1942, 139 Me. 1, 26 A.2d 637. The burden is on the party attacking the judgment to demonstrate affirmatively from the face of the record that the court lacked jurisdiction. Inhabitants of Lincolnville v. Perry, supra.

■ A judgment is also void if it goes beyond the scope of the issues tendered and adjudicates a question not submitted to the court for decision. The point decided must be, in substance and effect, within the issue. Gille v. Emmons, 1897, 58 Kan. 118, 48 P. 569; Standard Savings & Loan Ass'n v. Anthony Wholesale Grocery Co., 1916, 62 Okl. 242, 162 P. 451; Electrical Research Products v. Haniotis Bros., 1934, 170 Okl. 150, 39 P.2d 42.

"The invalidity of the judgment depends upon the fact that it is in no manner responsive to the issues tendered by the pleadings. This idea underlies all litigation. Its emphatic language is that a judgment, to be conclusive upon the parties to the litigation, must be responsive to the matters controverted."

Reynolds v. Stockton, 1891, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464.

This Court recognized the principle when, in the application of the doctrine of res adjudicata, it ruled that

"[t]he expression that a judgment is conclusive not only as to subject-matter, but also as to every other matter that was or might have been litigated, means that *a judgment is decisive upon the issues tendered by the proceeding.*" (Emphasis supplied.)

See, Susi v. Davis, 1935, 133 Me. 354, 357, 177 A. 610, 612, 97 A.L.R. 1222. Thaxter v. Fry, 1966, Me., 222 A.2d 686, 691.

The equity practice in this State, prior to the adoption of the Maine Rules of Civil Procedure, was subject to the reference strictures and it was a well established principle that a decree in equity based upon a cause not set forth in the bill was beyond the very power and authority of the court. It was unenforceable and subject to collateral attack, because the lack of authority to issue the decree appeared on the face of the record. See, Semo v. Goudreau, 1951, 147 Me. 17, 83 A.2d 209, and cases cited therein. But this Court in *Semo* further said that "[s]uch collateral attack does not have the effect of either exceptions to, or an appeal from the original decree. It does not reopen the original case for either amendment of the bill, decree, or *reconsideration of the case on the merits.*" (Emphasis ours.)

The Justice below in the challenged dismissal order did refer to the fact that the plaintiff had received an award of damages in connection with the taking of her property by the Authority. The plaintiff's complaint presented a two-pronged claim for damages stated in separate counts, one for the fair value of the condemned premises at the time of taking, and the other for unlawful interference, prior to the taking, with her contract rights with tenants occupying the rental units upon the subsequently acquired property. The Justice explained why he was dismissing the plaintiff's complaint and gave as the reason for his ruling that it did not state a claim upon which relief can be granted. He referred to the plaintiff's misplaced reliance upon the *Sidelinker* case.

In Sidelinker v. York Shore Water Company, 1918, 117 Me. 528, 105 A. 122, Sidelinker was awarded damages for the loss suffered in being prevented from the operation of certain timber lands by reason of an unlawful attempted condemnation of the property by the water company. No law-

ful condemnation followed the condemnor's preliminary conduct in anticipation of a later taking.

In the instant case, the Authority's alleged tortious conduct respecting the plaintiff's property was in connection with, and followed by, a lawful taking. When the Justice said that the defendant had paid damages for the acquisition by eminent domain of the plaintiff's property and that the plaintiff was entitled to nothing further, he was not talking in terms of a judgment-debt and its satisfaction. Rather, he was indicating that the plaintiff's complaint asserted a claim for damages arising out of a single occurrence, the taking of plaintiff's property, even though it described in separate counts different aspects of recoverable damages. In other words, the presiding Justice impliedly ruled that the plaintiff had a single cause of action which could not be split into two distinct actions and recoveries.

> "If a plaintiff has two separate causes of action, he is free to sue upon them separately. He cannot, however, split a single cause of action into two lawsuits. * * * Moreover, the concept of a cause of action is considerably broader than it was under the artificial restrictions imposed by the common law forms of action.
>
> The measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." 2 Field, McKusick and Wroth, Maine Civil Practice, § 18.1, p. 360.

■ This Court applied the doctrine in Foss v. Whitehouse, 1901, 94 Me. 491, 48 A. 109, where the plaintiff's recovery of a judgment for money paid in obtaining his release from jail was ruled a bar to a subsequent action of tort to recover damages for unlawful imprisonment incidental to the incarceration, the Court clearly stating the rule in the following terms:

> "It is common learning that a plaintiff cannot thus split up a cause of action and

bring several actions for the different items of damage resulting from the one cause of action. If he does bring an action for some only of such items of damage, he is barred from bringing another action for any other items of damage from the same cause. *So, if he brings several actions simultaneously and prosecutes one to judgment first, he cannot proceed with the other actions.*" (Emphasis ours.)

The same would be true where the several actions were made part of a single complaint but were stated in separate counts thereof. This Court re-affirmed the concept that, given a single cause of action, a plaintiff cannot split it up to seek several recoveries for different items of damage resulting therefrom. Pillsbury v. Kesslen Shoe Company, 1939, 136 Me. 235, 7 A.2d 898 (physical injury and personal property damage arising out of one occurrence).

■ It is well settled that a court will take judicial notice of its own records in the case before it, including all prior pleadings and adjudications in the same case when they are pertinent to the immediate issue under consideration, especially when the pending action before the court is a motion collaterally to set aside or vacate a previously entered final judgment which stands unreversed. Ladd v. Bean, 1920, 119 Me. 377, 111 A. 428; Baca v. Catron, 1917, 24 N.M. 242, 173 P. 862, 864; State ex rel. Halvorson v. Simpson, 1951, 78 N.D. 440, 49 N.W.2d 790, 793, 794; Ablah v. Eyman, 1961, 188 Kan. 665, 365 P.2d 181, 184; Brockett v. Jensen, 1966, 154 Conn. 328, 225 A.2d 190; 29 Am.Jur.2d Evidence, § 57, p. 89; 31 C.J.S. Evidence § 50(2), p. 1027.

■ Res judicata or the splitting of the plaintiff's cause of action as a defensive issue appeared from the face of the complaint, pleadings and the record in the case. Such defense was available in a 12(b) (6) motion alleging in broad terms that the plaintiff's amended complaint fail-

**368**

ed to state a claim upon which relief can be granted, notwithstanding the defendant could have asserted it in its answer and prosecuted it as an affirmative defense. Southard v. Southard, 1962, 2 Cir., 305 F.2d 730; 2A Moore's Federal Practice, § 12.08, n1, p. 2265.

■ Although the motion to dismiss did not allege in specific allegations the underlying facts of the defense of res adjudicata such as the identity of the parties and the identity of the subject matter adjudicated under the original complaint, such issues were the only possible ones under the motion to dismiss and were so understood at the time by the parties. There is no other explanation for plaintiff's suggestion to the Court that the case of Sidelinker v. York Shore Water Company, supra, controlled the situation and dispelled any claim that the amended complaint failed to state a claim upon which relief can be granted. Such would be so, if the claim stated in the amended complaint was independent from and not part of a single cause of action. Plaintiff, without questioning the procedural aspect of the proceeding, participated fully in the hearing on the motion and advanced her position respecting the merits of the issue before the Court and lost. Even if we should agree that the plaintiff's amended complaint alleging tortious conduct preliminary to the Authority's condemnation was a distinct and independent cause of action from that based on damages for the taking itself, the Court's decision on the motion to dismiss presented an adjudication, which, absent a reversal on appeal, is binding on the parties in the instant 60 (b) (4) motion and the Court below could not, in this second attack, question the correctness of the decision in the first assault.

"It is fundamental that material facts or questions judicially determined in one action by a judgment may not be tried in a subsequent action between the same parties or their privies, whether the second action is upon the same or a differ-

ent cause of action as the earlier action." Florasynth Laboratories v. Goldberg, 1951, 7 Cir., 191 F.2d 877.

The issue on the motion to dismiss was whether the amended complaint based on alleged tortious acts prior to the taking presented an independent cause of action distinct from the claim for damages founded on the value of the premises condemned which had gone to judgment. Stated otherwise, the question raised was whether the plaintiff was splitting a single cause of action. The parties contested this issue on the merits. It was, in the absence of any objection on procedural grounds and in the light of the plaintiff's participation therein, a proper issue tendered by the motion to dismiss. We intimate no opinion upon the correctness of the dismissal judgment on the merits. The judgment was not void as that term is used in Rule 60(b) (4), M.R. C.P., and, if erroneous, is binding on the plaintiff at this time, since it stands unappealed and unreversed.

The entry will be

Appeal denied.