**NEW MAINE NATIONAL BANK**[1]

v.

**Arthur J. NEMON.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 19, 1991.

Decided April 1, 1991.

Michael K. Martin, Thomas A. Cox, Petruccelli, Cox & Martin, Portland, for plaintiff.

---

1. The Federal Deposit Insurance Corporation was appointed receiver of Maine National Bank on January 6, 1991, and thereafter assigned all the rights and claims that are the subject of this suit to New Maine National Bank. Accordingly, New Maine National Bank has been substituted for Maine National Bank as plaintiff-appellee in this case.

**1192** 

James L. Audiffred, Saco, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, CLIFFORD,
COLLINS, and BRODY, JJ.

PER CURIAM.

Arthur J. Nemon appeals from a judgment in the Superior Court (Cumberland County, *Brennan, J.*) granting the plaintiff, Maine National Bank, relief from final judgment pursuant to M.R.Civ.P. 60(b), in the form of $8,000 in additional attorney fees incurred in the post-judgment collection process. We affirm, and, finding the appeal frivolous, award sanctions pursuant to M.R.Civ.P. 76(f).

## I.

In 1985, Nemon borrowed $125,000 from Maine National Bank, executing a demand promissory note that stated, among other things,

> 3. Borrower ... agrees to pay all costs of collection, including reasonable attorneys' fees....
>
> 4. ... Failure by Bank to exercise any right, remedy or option under this Note, or delay in exercising the same will not operate as a waiver thereof; no waiver by the Bank will be effective unless it is in writing, signed by an officer of the Bank and delivered to the Borrower, and then only to the extent specifically stated.

Following Nemon's default in payment, the Bank demanded the balance due, and then sued Nemon on the note. The court (*Alexander, J.*) granted summary judgment for the Bank for the amount of the principal balance due, accumulated interest, and attorney fees and disbursements incurred up to May 15, 1989, plus "$3,000.00 in attorneys' fees and costs estimated to be incurred in the collection of said amount." A writ of execution in the amount of $144,130.47 followed.

Then began a merry chase. At a disclosure hearing held December 8, 1989, in the District Court (Biddeford, *Crowley, J.*). Nemon failed to produce specified documents that he had been ordered to produce; he was ordered to pay $2,000 per week on the judgment. After he missed several of these payments, the Bank moved to have him held in contempt. Nemon failed to appear at the contempt hearing. The court (*Gaulin, J.*) ordered him to appear on March 1 with specified documents. He appeared on that date without the documents, and the hearing was continued. Nemon failed to appear for the next scheduled hearing date, March 13. The court thereupon authorized a civil order of arrest. Nemon appeared on the next hearing date, April 5, but did not bring the documents. The court (*Gaulin, J.*) granted the Bank's motion to have him held in contempt, and ordered him incarcerated pending his compliance with the court's order; sentence was stayed for one week to allow him an opportunity to purge himself of contempt. He failed to do so. An arrest warrant was accordingly issued on April 12, 1990.

On April 13, Nemon paid the outstanding balance due on the judgment. The Bank specifically reserved the right to assert a claim against him for additional attorney fees and costs incurred in the collection of the judgment.

On July 9, 1990, the Bank moved in the Superior Court for relief from judgment pursuant to M.R.Civ.P. 60(b), seeking "additional attorneys' fees incurred in the post judgment disclosure process, the attorneys' fees incurred in bringing this motion, and the attorneys' fees estimated to be necessary in collecting these additional sums." That motion was supported by affidavits and memoranda detailing the Bank's efforts to collect the judgment, including the various disclosure and contempt proceedings, the use of a private investigator, and asset searches in the York County and Cumberland County Registries of Deeds. The affidavits showed that the actual cost of satisfying the judgment was $7,000 in excess of the $3,000 originally estimated as the cost of collection, that the cost of bringing the Rule 60(b) motion was $1,000, and that the Bank estimated it would incur additional costs of $5,000 in collecting the additional amounts obtained through the

Rule 60(b) motion, assuming Nemon were to continue his dilatory tactics.

On August 15, after the expiration of the 21-day period provided by M.R.Civ.P. 7(c) for filing of papers in opposition to motions, Nemon filed a memorandum in opposition to the Bank's Rule 60(b) motion that did not raise any of the issues he now argues on appeal.

The Superior Court (*Brennan, J.*) granted the Bank additional relief in the amount of $8,000, stating, "I am reluctant to conclude that Mr. Nemon will again act in a contemptuous manner. Therefore, no substantial sum for future attorney's fees is included herein. If I am wrong on this point, Plaintiff may apply for an additional award." Nemon now appeals. We review the Superior Court's grant of relief from judgment pursuant to M.R.Civ.P. 60(b) for abuse of discretion. *See Coastal Savings Bank v. Brooks*, 578 A.2d 1174, 1175–76 (Me.1990).

## II.

■ Nemon contends, for the first time on appeal, that Rule 60(b) relief is inappropriate where the relief sought goes to the substance of the judgment rather than the form. This argument lacks any merit whatsoever. Relief that goes to the substance of the judgment is precisely the function of Rule 60(b). *See, e.g., Lamoreau v. Maloney*, 573 A.2d 27, 28 (Me.1990) (vacating denial of Rule 60(b) relief where consent order, as entered, differed from judgment agreed to by parties). *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 60.1 at 71, § 60.5 at 73–74 (2d ed. 1970).

Nemon cites a series of antiquated federal cases in support of his argument. None is apposite, and all but one pre-date the Federal Rules of Civil Procedure. To the extent they are relevant at all, they stand for the proposition that an allowance of costs cannot be amended after the expiration of a term of court. That notion has been squarely rejected under the Maine Rules of Civil Procedure:

> The period of time provided for the doing of any act or the taking of any proceed-

ing is not affected or limited by the continued existence or expiration of a term of court. The existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil case.

M.R.Civ.P. 6(c). Rule 60(b) relief was appropriate in this case, subject to the trial court's sound discretion.

## III.

■ Nemon also contends, for the first time on appeal, that the Bank's Rule 60(b) motion was beyond the court's discretion to grant because it was really an untimely motion to alter or amend the judgment pursuant to M.R.Civ.P. 59(e). That argument lacks merit. The two motions can serve the same function, and the court was bound not by the caption of the motion but by its substance. *See Most v. Most*, 477 A.2d 250, 256 nn. 2, 4, 257–259 (Me.1984); 2 Field, McKusick & Wroth § 59.4a (2d ed. 1970). The motion was properly styled a motion for relief from judgment pursuant to M.R.Civ.P. 60(b), in view of the relief it sought.

The motion was filed approximately nine months after the entry of final judgment. Motions seeking relief pursuant to M.R. Civ.P. 60(b)(1)–(3) must be filed within one year of the entry of final judgment, while other Rule 60(b) motions need only be filed within "a reasonable time." We conclude from this record that the proper basis for relief was "misconduct of an adverse party," as provided for under Rule 60(b)(3), and that the motion was timely.

## IV.

■ The moving party must produce competent evidence in support of a Rule 60(b) motion. *Daniel v. Palmer*, 580 A.2d 689 (Me.1990); *Laurel Bank and Trust Co. v. Burns*, 398 A.2d 41, 44–45 (Me.1979). Nemon contends, for the first time on appeal, that the court abused its discretion in granting Rule 60(b) relief because Maine National Bank did not present adequate evidentiary support for its motion. The record does not support his assertion. The

Bank submitted extensive affidavits detailing its efforts to collect the judgment and the fees and disbursements involved in those efforts. Nemon belatedly argues that an itemized bill should have been required. We find no abuse of discretion in the court's reliance on the Bank's affidavits.

## V.

██ Nemon argues, for the first time on appeal, that Rule 60(b) relief is barred in this case by the doctrine of *res judicata* because the question of future attorney fees involved in the collection of the judgment was fully litigated, or could have been fully litigated, in the underlying suit. *See Gurski v. Culpovich*, 540 A.2d 764, 765–66 (Me.1988); *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me.1982); *Kradoska v. Kipp*, 397 A.2d 562, 565 (Me.1979).

We are unpersuaded. At issue was the Bank's good faith estimate of its anticipated future expenses in collecting the judgment. The record demonstrates that the only reason the Bank's estimate was incorrect was Nemon's long-continued pattern of dilatory and contemptuous bad faith conduct in defying the Bank's efforts to collect. Nemon cannot now be heard to argue that the Bank is bound by the judgment because it failed to anticipate his misconduct. The possibility that Nemon would refuse to comply with future court orders, or otherwise interfere with the Bank's efforts to satisfy the judgment, was never litigated, nor is it easy to see how it could have been.

██ Nemon further argues—once again, for the first time on appeal—that the doctrine of *res judicata* limits the availability of Rule 60(b) relief to cases sounding in equity. His argument is based entirely on a distorted reading of this Court's statement that

> [t]he doctrine of res judicata might not preclude an action based on rights arising from the terms of the judgment itself, nor would it preclude an action to obtain relief from a valid judgment on recognized equitable grounds, subject to general equitable considerations.

*Hackett v. Eaton*, 389 A.2d 848, 849 (Me. 1978) (citing M.R.Civ.P. 60(b)). Contrary to Nemon's assertion, this statement means that the grounds for Rule 60(b) relief are equitable in nature, not that the judgment from which relief is sought must sound in equity. *See* 2 Field, McKusick & Wroth § 60.1 at 71, § 60.5 at 74 (2d ed. 1970). Even assuming that the distinction between legal and equitable judgments retains any vitality following the merger of law and equity under M.R.Civ.P. 1, the nature of the underlying judgment does not affect the availability of relief under Rule 60(b).

## VI.

██ Maine National Bank urges us to grant it treble costs and reasonable expenses, including attorney fees, incurred on this appeal, pursuant to M.R.Civ.P. 76(f). We find Nemon's appeal "egregious" and conclude that it "is obviously without any merit and has been taken without any reasonable likelihood of prevailing, and results in delayed implementation of the judgment of the [Superior Court]; increased costs of litigation; and dissipation of the time and resources of the Law Court." *Auburn Harpswell Ass'n v. Day*, 438 A.2d 234, 239 (Me.1981). Among other things, Nemon failed to raise before the Superior Court any of the arguments he has belatedly advanced on appeal. Accordingly, we assess sanctions pursuant to M.R.Civ.P. 76(f).

The entry is:

Judgment affirmed.

Treble costs are awarded to New Maine National Bank.

Remanded to the Superior Court for assessment against the defendant of New Maine National Bank's reasonable expenses, including attorney fees, on this appeal.

All concurring.